IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-01298-WDM-BNB

DAVID RYDZESKI,

     Plaintiff,

v.

CURIAN CAPITAL, LLC,

     Defendant.

_____

## ORDER ON MOTION FOR SUMMARY JUDGMENT
_____

Miller, J.

     This matter is before me on a Defendant's motion for summary judgment filed

April 25, 2007 (Docket No. 30).  For the reasons that follow, the motion for summary

judgment will be granted.

### Background

     This case arises out of Plaintiff's employment relationship with Defendant.

Plaintiff alleges that he was discriminated against during his employment and was

terminated in retaliation for notifying Defendant about this discrimination.   Plaintiff

was hired by Defendant in November 2002 as an internal wholesaler.  Internal

wholesalers work inside the office making cold calls and supporting external

wholesalers' efforts.  External wholesalers work in the field making sales calls to

customers.  Plaintiff initially applied as an internal wholesaler although during the

application process he expressed interest in an external wholesaler position.  After

interviewing, Plaintiff was hired at a base salary of $45,000 per year. The parties did not negotiate the starting base salary. Plaintiff contends that he was told that the base salary was non-negotiable but that other internal wholesalers were able to negotiate their starting salary to more than $45,000.

Based on work ethic and objective numerical data regarding, *inter alia*, number of calls and phone time, Plaintiff performed his job well. The vice president of sales, however, thought that Plaintiff did not perform his job well in terms of quality and that he did not have the sales skills necessary to move up to external wholesaler. (Conway Dep. 54:1–8; 83:8–84:7.) Plaintiff objects to this characterization of his abilities and asserts that he was well qualified to be an external wholesaler. In October 2003 Plaintiff was issued a written warning relating to an internal wholesaler presentation contest. After losing the contest, Plaintiff made an unprofessional remark for which he was written up. Although Plaintiff was not issued any further written warnings during his employment, he alleges that he was "subjectively disparaged and unjustifiably criticized" and "unfairly evaluated" during his employment. (Am. Compl. ¶ 13.)

Plaintiff claims he was denied five promotions during his employment. Four of these positions were external wholesaler positions and the other was a position for which Plaintiff can no longer remember the title.[1] Two of the external wholesaler

---

[1] In his deposition and brief, Plaintiff also makes reference to an sales desk manager position and to team leader positions. However, in his response brief Plaintiff admits for purposes of this motion that the only position, other than external wholesaler positions, he sought was an unknown position filled by Andrew Dreluck. (*See* Def.'s

positions were filled by internal wholesalers.

In fall 2004, Defendant underwent a restructuring. As part of the restructuring, nineteen employees were laid off; two, Plaintiff and one other, were internal wholesalers. With respect to the twenty-one internal wholesalers employed by Defendant, ten were kept at Curian Capital; nine were offered positions at Jackson National, the parent company of Curian Capital; and two were laid off. Thomas Conway, the vice president of the sales desk, ultimately made the decision as to which internal wholesalers would be laid off.

Plaintiff first complained of discrimination in November 2003 after he was issued the written warning for his conduct in relation to an internal wholesaler presentation contest. Plaintiff also complained of discrimination in June 2004 when another person, not Plaintiff, was promoted to an available external wholesaler position. Subsequently, Plaintiff's complaints of discrimination became part of a "continuing discussion" until his termination in December 2004. (Def.'s Mtn. Summ. J. at 83.) In late 2004, Defendant complained about his salary to Gary Stone, the assistant vice president for field human resources of Jackson National. Stone agreed to raise his salary to $50,000 retroactive to July 2004.

On May 25, 2005, Plaintiff filed an charge with the Colorado Civil Rights Division alleging discrimination in promotion decisions and discharge and retaliatory discharge. This charge was simultaneously filed with the Equal Employment

---

Mtn. Summ. J. ¶ 57; Pl.'s Resp. ¶ 57 at 6.)

Opportunity Commission (EEOC). Plaintiff filed this lawsuit on June 7, 2006.

In the complaint, Plaintiff alleges that the decision to hire him as an internal wholesaler, the decision to pay him $45,000, the failure to promote him on numerous occasions, the frequent and unjustifiable criticism, and the decision to lay him off were all based on discrimination. He further alleges that his discharge was a retaliation for complaining of discrimination during his employment and his intention to file an EEOC charge. Finally, Plaintiff claims that he was denied severance pay in retaliation for notifying Defendant of alleged discriminatory acts.

<u>Standard of Review</u>

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). "When applying this standard, [the court] view[s] the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. ) (citing *Byers v. City of Albuquerque*, 150 F.3d 1271, 174 (10th Cir. 1998)).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'"

*Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).  Then, "[t]o avoid

summary judgment, the nonmovant must establish, at a minimum, an inference of the

presence of each element essential to the case."  *Id.* (citing *Hulsey v. Kmart, Inc.*, 43

F.3d 555, 557 (10th Cir. 1994)).  A mere scintilla of evidence, however, is not

sufficient to create a genuine issue of material fact and survive summary judgment.

*Simms*, 165 F.3d at 1326 (quoting *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th

Cir. 1997)).

    A plaintiff alleging employment discrimination may prove intentional

discrimination directly or indirectly.  As is typical, this case is brought under the

indirect analysis set forth in *McDonnell Douglas Corp. v. Green*, which provides a

burden-shifting framework for assessing indirect, or circumstantial, evidence.  411

U.S. 792, 802–04 (1973); *see generally St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502,

506–058 (1993); *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th

Cir. 2000).

    Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden

of presenting a *prima facie* case of discrimination.  *Kendrick*, 220 F.3d at 1226.  The

essential purpose of the *prima facie* test is to eliminate "the most common

nondiscriminatory reasons for" the employment action.  *See id.* at 1227 (quoting

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981)); *see also St.*

*Mary's Honor Ctr.*, 509 U.S. at 506 (*prima facie* case "in effect creates a presumption

that the employer unlawfully discriminated against the employee") (quoting *Burdine*, 450 U.S. at 254) (alteration in quoted material)).  If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action.  *Kendrick*, 220 F.3d at 1226 (quoting *McDonnell Douglas*, 411 U.S. at 802).  If the defendant presents such a reason, the plaintiff bears the "ultimate burden" of showing that these proffered reasons are a pretext for unlawful discrimination.  *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1167 (10th Cir. 2000).

To show pretext, a plaintiff must demonstrate that the defendant was more likely motivated by a discriminatory reason or that its proffered reason "is unworthy of credence."  *Id.* (quotation omitted).  Three typical methods of showing pretext are: (1) evidence that the defendant's stated reason for the adverse action was false; (2) evidence that the defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or practice when making the adverse decision. *Kendrick*, 220 F.3d at 1230.  Pretext may be shown "'by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" *Rivera v. City & County of Denver*, 365 F.3d 912, 925 (10th Cir. 2004).

Colorado has adopted the *McDonnell Douglas* framework for analyzing discrimination claims brought under the state discrimination statutes. *Lawley v. Dep't of Higher Educ.*, 36 P.3d 1239, 1247 (Colo. 2001). Furthermore, although federal law does not control the analysis of a case brought under the Colorado Anti-Discrimination Statute, federal law is helpful in analyzing such a claim. *Colo. Civil Rights Comm'n v. Big O Tires, Inc.*, 940 P.2d 397, 399 (Colo. 1997). Therefore, the analysis for claims brought under state statues is the same for that brought under federal statutes.

Discussion

Plaintiff asserts two claims: (1) discrimination based on race, color, and national origin in violation of Title VII of the Civil Rights Act of 1964 (Title VII) and Colo. Rev. Stat. §§ 24-34-306, 402; and (2) retaliation in violation of Title VII and Colo. Rev. Stat. §§ 24-34-306, 402. With respect to the first claim, Plaintiff cites four acts in which he alleges disparate treatment: (1) he was not considered or hired as an external wholesaler; (2) he was paid a lower salary than other internal wholesalers; (3) he was not promoted; and (4) he was terminated. Defendant argues that many of the acts which Plaintiff complains of are time-barred and, therefore, not actionable. With respect to the second claim, Plaintiff alleges that he was terminated and denied severance pay in retaliation for notifying Defendant of allegedly discriminatory acts and his intent to filed an EEOC charge.

1.    Preliminary Matter

As a preliminary matter, I must address jurisdiction in this case. Although Defendant did not raise this argument, because exhaustion of remedies is a jurisdictional issue,[2] *see Shikles v. Sprint/United Mgmt. Co*, 426 F.3d 1304, 1317 (10th Cir. 2005), I must address exhaustion of remedies before I may address the merits of the claim. *See Cudjoe v. Independent Sch. Dist. No. 12*, 297 F.3d 1058, 1063(10th Cir. 2002). Generally, a plaintiff must exhaust administrative remedies with the EEOC prior to filing a Title VII claim in federal district court. *Simms v. Oklahoma ex. rel., Dep't of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999); *Jones v. Runyon*, 91 F.3d 1398, 1400 n.1 (10th Cir. 1996). "Thus, a plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter." *Simms*, 165 F.3d at 1326. Furthermore, "each discrete incident of [discriminatory] treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing *Nat'l R.R. Passenger Corp. V. Morgan*, 536 U.S.

---

[2] Although *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982), held that exhaustion of administrative remedies was not a jurisdictional requirement to suit in federal court, the Tenth Circuit has continued to view exhaustion of remedies as a jurisdictional requirement. *See Jones v. Runyon*, 91 F.3d 1398, 1400 n.1 (10th Cir. 1996) (discussing Tenth Circuit authority that exhaustion of remedies is a jurisdictional requirement); *Jones v. UPS, Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007) ("In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to suit."(citing *Runyon*, 91 F.3d at 1399 n.1)). Other circuits have interpreted the *Zipes* decision to mean that exhaustion of administrative remedies is a "condition precedent or an affirmative defense that can be waived if it is not asserted by the defendant." *Runyon*, 91 F.3d at 1400 n.1.

101, 110–13 (2002)).[3]  The exhaustion "requirement is intended to protect
employers by giving them notice of the discrimination claims being brought against
them, in addition to providing the EEOC with an opportunity to conciliate the claims."
*Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1195 (10th Cir. 2004).

Similarly, Colo. Rev. Stat. § 24-34-306(14) requires a person to exhaust
proceedings and remedies available administratively before filing a civil law suit.
*See Brooke v. Rest. Servs.*, 906 P.2d 66, 70 (Colo. 1995) ("The [Colorado Anti-
Discrimination] Act requires exhaustion of administrative remedies before bringing
claims 'based on an alleged discriminatory or unfair practice prohibited by parts 4 to
7 of this article."").  And, as Colorado often looks to federal law in discrimination
cases, it is appropriate to analyze exhaustion of remedies under the two statutes
together.  *See Big O Tires, Inc.*, 940 P.2d at 399 ("[W]e find federal law helpful in
developing a thorough approach for proving intentional discrimination in state
employment discrimination cases.").

Plaintiff's EEOC charge filed with the Colorado Civil Rights Division alleges
only that Plaintiff was denied promotions and terminated in retaliation for notifying
Defendant of the alleged discriminatory practices.  The complaint, however, also
alleges that Plaintiff was discriminated against in the form of disparaging remarks,

---

[3]  This is a change from prior Tenth Circuit precedent which held that a judicial
complaint may include discriminatory acts not included in the EEOC charge if those
acts were "like or reasonably related to" the allegations in the EEOC charge.  *Martinez*,
347 F.3d at 1210 (discussing the impact of *Morgan* on the "continuing violations"
doctrine).

unjustifiable criticism, and unfair evaluations, (Am. Compl. ¶ 13); and that he was denied severance benefits in retaliation for complaining of allegedly discriminatory acts, *id.* ¶ 21. Because these are discrete acts, Plaintiff must exhaust administrative remedies for them before he may pursue a claim in federal court based on the acts. *Martinez*, 347 F.3d at 1210 (citing *Morgan*, 536 U.S. at 110–13). Plaintiff did not exhaust his administrative remedies with respect to these acts as they were not included in the EEOC charge. Therefore, Plaintiff's claims of discrimination and retaliation based on disparaging remarks, criticism and evaluations shall be dismissed for lack of subject matter jurisdiction because Plaintiff did not exhaust administrative remedies.

2.   Timeliness

Defendant argues that many of Plaintiff's claims are time-barred because they occurred outside the relevant limitations time period. Title VII requires filing within 180 days of the alleged unlawful employment practice, or 300 days if the "person aggrieved has initially instituted proceedings with a State or local agency." 42 U.S.C. § 2000e-5(e)(1). As Plaintiff filed his complaint with the Colorado Civil Rights Division, the 300-day, rather than the 180-day, limitations period applies to this case. *See id.* Colorado requires discrimination charges be filed within "six months after the alleged discriminatory or unfair employment practice occurred." Colo. Rev. Stat. § 24-34-403. A claim is time-barred and not actionable if it is not filed within these limits. *Id.*; 42 U.S.C. § 2000e-5(e)(1).

"Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" for which an EEOC charge must be filed. *Morgan*, 536 U.S. at 114. "Each discrete discriminatory acts starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred." *Id.* at 113; *see Duncan v. Manager, Dept' of Safety*, 397 F.3d 1300, 1308) (10th Cir. 2005) ("Title VII requires a litigant to file a claim within 300 days of the alleged discriminatory conduct."). This is a change from prior Tenth Circuit precedent which held that a judicial complaint may include discriminatory acts not included in the EEOC charge if those acts were "like or reasonably related to" the allegations in the EEOC charge. *Martinez*, 347 F.3d at 1210 (discussing the impact of *Morgan* on the "continuing violations" doctrine). Although at times it is difficult to determine when a discriminatory act occurs, acts such as "termination, failure to promote, denial of transfer, [and] refusal to hire are easy to identify." *Morgan*, 536 U.S. at 114. A decision to pay a certain wage is also a discrete discriminatory act and occurs at the time the decision regarding wage is made. *Ledbetter v. The Goodyear Tire & Rubber Co.*, 127 S.Ct. 2162, 2165 (2007).

"[W]hile [Plaintiff] allege[s] that he suffered from numerous discriminatory and retaliatory acts from the date he was hired . . . through . . . the date that he was fired, only incidents that took place within the timely filing period are actionable." *Id.* In this case, Plaintiff filed his charge with the Colorado Civil Rights Division and the EEOC on May 24, 2005. Thus, the 300-day limitations period under Title VII is July

11

28, 2004 and the six month limitations period under the Colorado statute is November 24, 2004. Because this is a motion for summary judgment and the summary judgment analysis under either method is the same, for purposes of this motion, I look to the longest limitations period—the 300-day Title VII period beginning on July 28, 2004. Therefore, the acts that fall within the timely filing period for Title VII are (1) the denial of promotion for the external wholesale position in Eastern Florida which was filled on August 4, 2004 by David Dietzler and (2) Plaintiff's discharge on December 15, 2004.[4]

All other acts which Plaintiff complains about are time-barred as they occurred more than 300 days prior to May 24, 2005. Specifically, the decision to hire Plaintiff as an internal wholesaler instead of an external wholesaler and the decision to pay Plaintiff a $45,000 base salary both occurred in November 2002—approximately a year and nine months outside the limitations period. Four of the five promotions that Plaintiff alleges he was denied due to his race also occurred prior to July 28, 2004: (1) the internal position with an unknown title was filled in 2003 by Andrew Draluck; (2) the western Florida external wholesaler position was filled by Carter Hatch by at least November 17, 2003; (3) the decision to not allow any internal wholesalers the opportunity to interview for the New Jersey/New York City external wholesaler position was made at the latest by November 20, 2003; and (4) the Michigan and

_____

[4] Although I look to the 300-day Title VII limitations period for purposes of this motion, I note that the only act that is timely under the Colorado statute is Plaintiff's discharge on December 15, 2004.

western Ohio external wholesaler position was filled by Chris Richardson by at least June 16, 2004.

Plaintiff argues that these acts are not time-barred because the date when Plaintiff learned that the acts were discriminatory occurred within 300 days of the filing date. However, "notice or knowledge of discriminatory motivation is not a prerequisite for a cause of action to accrue . . . . On the contrary, it is knowledge of the adverse employment decision itself that triggers the running of the statute of limitations." *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 558–59 (10th Cir. 1994) (citing *Hamilton v. 1st Source Bank*, 928 F.2d 86, 88-859 (4th Cir. 1990)) (addressing a claim under the Age Discrimination in Employment Act); *see Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1187 (10th Cir. 2003) (citing *Hulsey*, 43 F.3d at 558–59) (addressing claim filed under the Americans with Disabilities Act); *Felty v. Graves-Humphreys Co.*, 758 F.2d 516, 519 (4th Cir. 1986) ("A plaintiff's lack of knowledge of the discriminatory nature of an employment decision and the reasons for that lack of knowledge . . . play no part in determining the beginning of the statutory limitations period."). In this case, Plaintiff was aware of the failure to promote him when the positions were filled by others. Furthermore, it is undisputed that Plaintiff complained of discrimination in November 2003 and again in June 2004, after which discussions regarding discrimination were "continuing." Plaintiff's complaint in June 2004 directly related to the denial of a promotion to an external wholesaler position. This demonstrates that Plaintiff had knowledge or notice of the allegedly discriminatory nature of the denials of promotion by at least June 2004. Therefore,

Plaintiff cannot now claim that he failed to file an EEOC charge because he did not have notice of the discriminatory nature of the acts.

Plaintiff further argues that the acts are not time-barred because they are part of a "continuing violation." This doctrine, however, was expressly overruled in *Morgan*. 536 U.S. at 114. Finally, Plaintiff argues that these acts may be used as evidence to show a pattern of discrimination. Indeed, the fact that these acts are time-barred does not "bar an employee from using the prior acts as background evidence in support of a timely claim." *Id.* at 113. However, Plaintiff may not recover for these acts.

3.    <u>Failure to Promote</u>

Plaintiff's claim that he was unlawfully denied a promotion to external wholesaler, a position filled by Dietzler would be timely. To establish a *prima facie* case of failure to promote, Plaintiff must show: (2) he was a member of a protected class; (2) he applied for and was qualified for the position; (3) he was rejected despite being qualified; and (4) the position was filled after the plaintiff was rejected by someone outside of the protected class. *MacKenzie v. Denver*, 414 F.3d at 1266, 1277–78 (10th Cir. 2005).

In this case, Defendant does not dispute that Plaintiff met his *prima facie* burden. Instead, Defendant articulates legitimate non-discriminatory reasons for the failure to promote Plaintiff. Defendant alleges that Dietzler's qualifications better met criteria set by Defendant for filling the position, that Defendant was seeking someone with a "track record of success in a notable company, a history in the

14

territory . . . , and a demonstrated continued step-up in career path." Based on these factors, Defendant alleges that Dietzler was more qualified than Plaintiff because Dietzler had worked for the previous five years with a "notable" company and had demonstrated continued success in that position by substantially increasing the sales rank of his territory while Plaintiff had no proven track record in his 5 years and 9 months as an external.

Defendant, having met its burden of articulating non-discriminatory reasons for the failure to promote, is entitled to summary judgment unless Plaintiff can demonstrate that the reasons set forth are merely pretext for unlawful discrimination. In failure to promote cases, an inference of pretext may be drawn "where 'the facts assure [the court] that the plaintiff is better qualified than the other candidates for the position.'" *Santana v. City & County of Denver*, 488 F.3d 860, 965 (10th Cir. 2007) (quoting *Jones*, 349 F.3d at 1267). The Tenth Circuit has "cautioned that 'pretext cannot be shown simply by identifying minor differences between plaintiff's qualifications and those of successful applicants," but only by demonstrating 'overwhelming' merit disparity." *Id.* (quoting *Bullington v. United Airlines, Inc.*, 186 F.3d 1301, 1319 (10th Cir. 1999), *overruled on other grounds by Morgan*, 536 U.S. 101). It is not the court's role "to act as a 'super personnel department' that second guesses employers' business judgments." *Simms*, 165 F.3d at 1330 (citing *Verniero v. Air Force Acad. Sch. Dist.*, 705 F.2d 388, 390 (10th Cir. 1983)).

Here, Plaintiff has not shown that there was an "overwhelming" disparity between his qualifications and those of Dietzler. In fact, Plaintiff does not even

address the differences in qualifications between himself and Dietzler, but merely asserts that he is qualified to be an external wholesaler.  Specifically, Plaintiff alleges that the objective numbers of his performance were good, he had a good work ethic, his presentation skills on the phone were good, he made the presentation finals at least once, he had experience as an external, and he had the most seniority of the internal wholesalers. However, as Plaintiff has failed to show an "overwhelming merit disparity" between his qualifications and those of Dietzler, Plaintiff has failed to demonstrate that Defendant's proffered reasons for hiring Dietzler as an external wholesaler instead of Plaintiff are pretext for discrimination.

4.    Discriminatory Discharge

The claim for discriminatory discharge is timely.  A *prima facie* case for discriminatory discharge is established when the plaintiff demonstrates that  (1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged from the job; and (4) the job was not eliminated after the plaintiff's discharge.  *Perry v. Woodward*, 199 F.3d 1126, 1138 (10th Cir. 1999).  However, the fourth element is a flexible one that can be satisfied differently depending on the circumstances. *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1166 (10th Cir. 20047) (citing *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005)).  Indeed, "[t]he critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'" *Kendrick*, 220 F.3d at 1227 (citing *Burdine*, 450 U.S. at 253–54).  Even though Plaintiff's job

16

was eliminated after his discharge, the parties do not dispute for summary judgment purposes that Plaintiff has established a *prima facie* case of discriminatory discharge.

Under the *McDonnell Douglas* framework, the burden then shifts to Defendant to articulate legitimate, non-discriminatory reasons for the discharge. *Kendrick*, 220 F.3d at 1226 (quoting *McDonnell Douglas*, 411 U.S. at 802). Defendant alleges that Plaintiff was terminated as part of a restructuring and that the decision to terminate Plaintiff specifically was based on attitude. Conway, the person who made the lay off decision, stated in his deposition that he ranked Plaintiff at the bottom of all the internal wholesalers because of "how he was viewed by his peers and given the superiority complex he had" and "the difficulties that were relayed to [Conway] as it relates to [Plaintiff's] phone activity." (Conway Dep. 97:19–98:13).

After the defendant has proffered legitimate, non-discriminatory reasons for the adverse employment decision, the burden shifts to the plaintiff to show the reasons are merely pretext for discrimination. In this case, Plaintiff alleges that another person who also had an "attitude" problem and had less experience than Plaintiff was not laid off but was promoted (referring to Narum) and that the only other person who was laid off was laid off because she was "allegedly terrible and she allegedly did not know what she was doing." (Pl.'s Resp. at 25 (citing Narum Dep. 139:16–140:18).) Plaintiff further argues that he had good customer service skills over the phone and had proven himself at performing presentations on at least one occasion during a company presentation contest. I construe Plaintiff's argument

17

as two-pronged: (1) that the decision to lay off Plaintiff was inconsistent with Narum's continued employment and promotion and (2) the proffered reasons for the decision to lay off Plaintiff are false because Plaintiff actually had performed his job well contrary to the other person who was laid off.

Plaintiff's first argument is insufficient to demonstrate pretext because the decision to promote Narum and, eventually to retain him during the restructuring, is not contrary to the decision to lay off Plaintiff. Narum occupied a different position than Plaintiff during the restructuring—one for which there was apparently no reason to reduce in number during the restructuring. Accordingly, Plaintiff and Narum were not compared to each other during the lay off decision. It is also noteworthy that the specific attitude issue with Narum was different than the difficulties with Plaintiff. Conway described Narum as "short" with others while Plaintiff was described as having a superiority problem and problems with the way his peers viewed him. Inconsistencies in the adverse employment action cannot be shown by comparing two different levels of employees with two different types of attitude problems. Therefore, Plaintiff's first argument fails to demonstrate pretext.

Plaintiff's second argument attacks the veracity of Defendant's proffered reasons for laying off Plaintiff. In particular, Plaintiff argues that his objective numbers were good, his customer service skills on the phone were good, and he had a good work ethic. Although the objective numbers and skill on the phone were considerations in the determination of discharge, Defendant articulates additional considerations used to make the decision including Plaintiff's alleged superiority

complex and difficulties with peers.  Plaintiff's failure to address these proffered reasons precludes a finding of pretext.  Similarly, Plaintiff's recitation of the reasons that the other laid off employee was chosen to be laid off does not address the truth or falsity of the reasons proffered for Plaintiff's discharge.  Therefore,  Plaintiff has failed to demonstrate that Defendant's proffered legitimate, non-discriminatory reasons for his discharge are merely pretext.

5.    Retaliatory Discharge

To establish a *prima facie* case of retaliatory discharge, Plaintiff must show that (1) he engaged in protected opposition to discrimination; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action.  *See Kendrick*, 220 F.3d 1220, 1234 (10th Cir. 2000).  "[T]o establish a "causal connection," plaintiff must show that the individual who took adverse action against him knew of the employee's protected activity."  *Williams v. Rice*, 983 F2d 177, 181 (10th Cir. 1993) (citing *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 635 (10th Cir. 1988)).  A retaliatory motive and, therefore, a causal connection, may be inferred when there is close temporal proximity between the protected activity and the adverse employment action.  *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citing *Chavez v. City of Arvada*, 88 F.3d 861, 866 (10th Cir. 1996)).  For example, a "one and one-half month period between protected activity and adverse action may, by itself, establish causation."  *Id.* (citing *Ramirez v. Okla. Dep't of Mental Health*, 41

F.3d 584, 596 (10th Cir. 1991)). But, a three month period is not alone sufficient. *Id.* (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997)). In this case, the protected activity occurred as a "continuing discussion" from June 2004 until the time he was terminated. The parties do not dispute that this is sufficient to establish a *prima facie* case of retaliatory discharge.

The arguments set forth by the parties are identical to those set forth in the discriminatory discharge section above. Accordingly, my analysis is the same with one exception. In retaliatory discharge cases, "[c]lose temporal proximity between the employee's complaint and adverse employment action is a factor in determining whether the employer's proffered reason is pretext for retaliation." *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000). However, while "close temporal proximity suggests pretext,"*id.*, it is not "alone sufficient to defeat summary judgment." *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240 (10th Cir. 2004) (citing *Pastran*, 210 F.3d at 1206).

In this case, there was close temporal proximity between the protected activity and the adverse employment action. However, I do not find that the addition of close temporal proximity as a factor to consider changes the analysis set forth above because it does not change the deficiencies in Plaintiff's pretext argument. Therefore, Plaintiff has failed to demonstrate pretext with respect to his retaliatory discharge claim.

Accordingly, it is ordered:

1.  Defendant's motion for summary judgment (Docket No. 30) is granted and

    Plaintiff's case is dismissed with prejudice.

2.  Defendant may have its costs.


DATED at Denver, Colorado, on February 14, 2008.

BY THE COURT:


s/ Walker D. Miller
United States District Judge